UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRENT HONORE | CIVIL ACTION |
| VERSUS | |
| AIG PROPERTY CASUALTY<br>INSURANCE AGENCY, INC., ET AL. | NO.: 3:13-cv-00667-BAJ-SCR |

## RULING, ORDER & JUDGMENT

Before the Court are cross-motions for summary judgment and various related filings. (*See* Doc. 14 (Lexington Insurance Company's Motion for Summary Judgment); Doc. 27 (Brent Honore's Motion for Summary Judgment); Doc. 28 (Brent Honore's *second* Motion for Summary Judgment); *see also* Doc. 25 (Brent Honore's Motion to File Supplemental Memorandum); Doc. 30 (Brent Honore's Motion for Status Conference)). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Oral argument is not necessary. Consistent with this Order, the Court determines that Defendant Lexington Insurance Company's Motion for Summary Judgment shall be granted; Plaintiff Brent Honore's Motion for Summary Judgment shall be denied; and final judgment shall be entered in favor of Defendants Lexington Insurance Company and AIG Property Casualty Insurance Agency, Inc., and against Plaintiff Brent Honore.

## I. BACKGROUND

On October 10, 2013, Plaintiff Brent Honore ("Honore") sued his insurers AIG Property Casualty Insurance Agency, Inc. ("AIG") and Lexington Insurance

Company ("Lexington"), seeking recovery for the loss of his home pursuant to the terms of his Homeowners' Insurance Policy. (Doc. 1). Honore later amended his Complaint to add claims for unfair trade practices in violation of La. Rev. Stat. Ann. § 51:1401, and failure to adjust his claim fairly and promptly in violation of La. Rev. Stat. Ann. § 22:1973. (Doc. 4 at ¶ 24).

The undisputed evidence in the record establishes the following[1]: Honore owns a home located at 10539 Island Road, Ventress, Louisiana. (Doc. 14-2 at ¶ 1). On August 16, 2013, Honore's home was destroyed by fire. (*Id.* at ¶ 2). At the time of the fire, Honore's property was insured through a Homeowners' Insurance Policy ("the Policy") issued by Lexington. (*Id.* at ¶ 3; Doc. 14-3 (Homeowners' Insurance Policy No. 60944582, issued to Brent Honore)). The Policy includes certain "CONDITIONS" of coverage, including "Duties after Loss" required of the insured. (*See* Doc. 14-3 at p. 30). Among other things—and of particular significance to this action—the Policy provides:

### B. Duties After Loss

> In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed by you, an "insured" seeking coverage, or a representative of either:
>
> . . .
>
>     7.    As often as we reasonably require:

---

[1] The Court draws these facts from Lexington's Statement of Uncontested Material Facts (Doc. 14-2)—which is generally corroborated by Honore's Memorandum Opposing [sic] Motion for Summary Judgment, (Doc. 17)—other exhibits appended to Lexington's Motion to Dismiss, (*see* Docs. 14-3–14-10), and Honore's Affidavit and Record of Correspondence with AIG and Lexington, (Doc. 28-3).

. . .

      **b.**    Provide us with records and documents we request and permit us to make copies; and

      **c.**    Submit to examination under oath, while not in the presence of another "insured", and sign the same . . . .

(*Id.*).

Shortly after the fire, Honore made a claim for damage to his property pursuant to the Policy. (Doc. 14-2 at ¶ 1; Doc. 17 at p. 1). Various correspondences between Honore and Lexington ensued. (*See* Doc. 14-2 at ¶¶ 7–9; Doc. 17 at pp. 1–2; Doc. 28-3 at pp.3–7). On September 16, 2013, Lexington—through its attorneys—sent Honore a letter requesting that he submit to a "sworn examination, under oath," pursuant to the terms of the Policy. (Doc. 14-6 at p. 1). This letter further informed Honore that he was "entitled to be represented by counsel of [his] own choosing, and at [his] own expense, while [Lexington's attorneys] conduct[ed] this examination." (*Id.*).

Upon receiving Lexington's letter, Honore retained an attorney and, through counsel, began negotiating a date for his sworn examination. (*See* Doc. 28-3 at pp. 5–6; Doc. 17 at p. 2). On September 26, 2013, after a series of emails failed to produce a date and time amenable to all parties, (*see id.*), Lexington's attorneys sent Honore a second letter. (Doc. 14-7). This letter apprised Honore of the status of his claim, (*id.* at pp. 1–2); copied relevant portions of the Policy's language, including the section describing the insured's "Duties after Loss," (*id.* at pp. 3–4); and,

pursuant to the Policy, requested "additional information . . . to make a fully informed decision regarding this claim," (*id.* at p. 3; *see id.* at pp. 4–8). In closing, the letter stated "Lexington is not asking you to give up any rights you have," and assured "[n]o decision regarding this claim has been made at this point." (*Id.* at p. 8).

Honore did not comply with Lexington's September 26 request for documents. (*See* Doc. 14-10 at pp. 3–4 (email correspondence between counsel for Lexington and counsel for Honore); *see also* Doc. 28-3 at pp. 6–7 (documenting same)). Nor did Honore ultimately comply with Lexington's request that he sit for an examination under oath. (*See* Doc. 14-10 at pp. 3–4). Instead, on October 8, 2013—convinced that "he [was] being accused of fraud, concealment and having involvement in the fire"—Honore informed Lexington by email that he intended "to file a suit in federal court" to compel payment of his claim. (*Id.* at p. 2).

The next day, Lexington responded with a third letter. (Doc. 14-9). In this correspondence Lexington once again assured Honore that it "[had] not denied coverage or reached any conclusions about the loss and the claim" and "[was] continuing to investigate the loss, including the cause and origin of the fire." (*Id.* at p. 1). Lexington also reiterated its request for "documents and information," including the examination under oath. (*Id.* at pp. 1–2). Honore's counsel responded with an email stating "suit has been filed . . . in the Middle District Baton Rouge." (Doc. 14-10 at p. 1).

4

Honore filed his lawsuit on October 10, 2013. (*see id.* at p. 1; Doc. 1). On January 22, 2014, Lexington filed its Motion for Summary Judgment. (Doc. 14). Honore filed his opposition to Lexington's Motion on February 13, 2014, (Doc. 17), and then followed with his own Motion for Summary Judgment on April 8, 2014 (Doc. 27; Doc. 28).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and

5

on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. LAW AND DISCUSSION

Lexington urges the Court to dismiss Honore's Amended Complaint because the evidence shows that "Honore has refused to cooperate in the investigation of the insurance claim that is the subject of this lawsuit and has breached the express conditions of the insurance policy at issue in this case," thereby "void[ing] insurance coverage for his alleged loss as a matter of law." (Doc. 14 at p. 1). Honore responds that "Lexington's Motion for Summary Judgment must be denied" because "[his] sworn testimony . . . [establishes that he] <u>made every effort possible to work with Lexington and only sued after Lexington's repeated dilatory tactics</u>." (Doc. 25-2 at p. 3 (emphasis in original); *see also* Doc. 17). Likewise, Honore asserts that the same "sworn testimony"—in the form of an affidavit—establishes "that he is entitled to an order granting summary judgment in his favor." (Doc. 28-2). Lexington opposes Honore's Motion for Summary Judgment, reiterating that Honore has failed to present "[any] <u>evidence</u> to support the conclusion that [he] has complied with the express terms and conditions of coverage under the Policy." (Doc. 29 at p. 1 (emphasis in original)).

The Court has little trouble determining that Honore cannot prevail in any of his claims against Lexington and/or AIG. First, Honore's claim for compensation for the loss of his home pursuant to his Homeowner's Policy fails because, under

6

Louisiana law, "compliance with insurance policy provisions [is] a condition precedent to recovery." *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685, 688 (La. Ct. App. 1992). By the same token, "failure of an insured to cooperate with the insurer . . . [is] a material breach of the contract and a defense to a suit on the policy." *Id.*; *see also Mosadegh v. State Farm Fire & Cas. Co.*, 330 F. App'x 65, 66 (5th Cir. 2009) (unpublished but persuasive) ("Because Louisiana law teaches that failure to fulfill policy requirements that are conditions precedent to an insurance contract precludes suit under the policy, the [insured's] failure [to submit to an examination under oath as required by the insurance policy] served as a basis on which to grant [the insurer's] summary judgment motion." (footnote omitted)). Here, there is no question that Honore was bound by the terms of the Policy to comply with Lexington's "reasonabl[e]" requests for (1) an "examination under oath," and (2) additional "records and documents." (Doc. 14-3 at p. 30). Honore has not identified any evidence to show that Lexington's requests for these items were *un*-reasonable, nor could he, given Lexington's timely and repeated efforts to coordinate production of such materials. Thus, by failing to submit to Lexington's initial request for an examination under oath, and its subsequent request for documents, Honore materially breached the Policy's terms, thereby precluding his ability to sue for recovery on the Policy. *Lee*, 607 So. 2d at 688 ("An outright refusal to submit to an examination is the easy case."); *see also Kerr v. State Farm Fire & Cas. Co.*, 934 F. Supp. 2d 853, 863 (M.D. La. 2012), *aff'd*, 511 F. App'x 306 (5th Cir. 2013) (same).

Further, Honore's breach *necessarily* prejudiced Lexington, because Lexington could not obtain information relevant to its investigation while it was still fresh, and could not inspect Honore's property in a timely fashion after receiving information from an examination under oath. *See Kerr*, 934 F. Supp. 2d at 860–61.

Second, Honore's statutory bad faith claim against Lexington fails because he cannot show that Lexington "acted in an arbitrary and capricious manner" while investigating his claim. *See Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 297 (5th Cir. 2009). Indeed, the evidence shows the opposite: Lexington promptly commenced an investigation into Honore's claim, and afforded Honore multiple opportunities to comply with its requests for an examination under oath and production of documents, only to be stymied by Honore's decision to file suit rather than comply with the express terms of the Policy.

Finally, Honore's unfair trade practices claim fails because he cannot show that Lexington's conduct "offends established public policy," or was "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14), reh'g denied (July 1, 2014) (quotation marks omitted); *see also id.* ("[T]he range of prohibited practices under [Louisiana's Unfair Trade Practice Act] is extremely narrow, as [the Act] prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence."). Rather, the evidence convincingly shows that Lexington merely

8

sought to conduct an investigation—as was its right—pursuant to the express terms of the Policy.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Honore's **MOTION TO FILE SUPPLEMENTAL MEMORANDUM (Doc. 25)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Honore's **MOTION FOR STATUS CONFERENCE (Doc. 30)** is **DENIED**.

**IT IS FURTHER ORDERED** that Lexington's **MOTION FOR SUMMARY JUDGMENT (Doc. 14)** is **GRANTED**. Honore's claims against Lexington and co-Defendant AIG are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Honore's **CROSS-MOTION[S] FOR SUMMARY JUDGMENT (Doc. 27; Doc. 28)** are each **DENIED**.

**IT IS FURTHER ORDERED** that judgment be entered in favor of Defendants and against Honore.

Baton Rouge, Louisiana, this 15th day of September, 2014.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA